IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MICHAEL PALM, JAMES FOGHORN,
RAY MADRID, CHRISTOPHER
TORRES, SKIP MARQUARDT,
GUADALUPE AVILA, JANET
HILL-KING, KAREN HERRERA,
ANTHONY CORDOVA, ERIC ALLEN,
MISTI CARMICHAEL, RENE
SWANBERG, DEBBIE PADILLA,
JOSEPH TRUJEQUE, REYNA
MARTINEZ, ROBERT CANDELARIA,
MICHAEL LENDINO, DANIEL JANZEN,
STEPHEN PERKINS, ANTHONY
CANDELARIA, LEE JONES, ADAM
TORRES, CLINTON CHRISTISON,
ENOCK ARVIZO, JUAN MUNIZ,
SHELLY BARTON, and RODNEY
HOGHES on their own behalf and on
behalf of all others similarly situated,**

      Plaintiffs,

                                                                         **No. 09-CV-397 MCA-LAM**

vs.

**THE BOARD OF COUNTY COMMISSIONERS
OF BERNALILLO COUNTY,**

      **Defendant.**

**JOINT MOTION TO APPROVE SETTLEMENT AND STIPULATED JUDGMENT**

      COME NOW the parties, by and through undersigned counsel, and hereby move the Court, pursuant to 29 USC §216 to approve a settlement and enter a stipulated judgment as set forth in Exhibit A to this motion. As grounds for such motion, the parties state as follows:

**I. Background of the Claims and Defenses in the Litigation**

      Plaintiffs are a group of Corrections Officers, Sergeants and Lieutenants employed (or formerly employed) at the Bernalillo County Metropolitan Detention Center. The original

Motion to Approve Settlement and Stipulated Judgment - 1

Complaint, filed by four named corrections officers on April 27, 2009, alleged that as a result of certain job requirements imposed by Bernalillo County and the necessity of operating a detention center (and attendant security needs), the Plaintiffs and all other Corrections Officers, Sergeants and Lieutenants were routinely required to work in excess of their scheduled 8-hour shifts, but were not routinely paid for the time worked in excess of their scheduled shifts.  (Dkt. 1). Plaintiffs amended their complaint on July 23, 2009, to include new named plaintiffs bringing the total named plaintiffs to 28.  (Dkt. 17.)  The failure to pay for all time worked was alleged to violate both State and Federal Wage and Hour laws.  The case was alleged to be appropriate for treatment as a collective action pursuant to the Fair Labor Standards Act.  29 USC §216(b).  In addition, Plaintiffs claimed they (and all others who affirmatively joined the suit) were entitled to back pay, an additional equal amount as liquidated damages, and their fees and costs.

       Defendant Board of County Commissioners of Bernalillo County Answered, generally denying the allegations and interposing numerous affirmative defenses.  (Dkt. 7).  Particularly relevant to this motion, the County asserted affirmative defenses based on the Portal-to-Portal Act alleging that the excess time spent, if any, constituted non-compensable travel time, and that any failure to pay for time actually worked was a mistake made in good faith (presenting an affirmative defense to the claim for extending the statute of limitations from two years to three and for liquidated damages). (Id.).

       Plaintiffs moved to certify the case as a collective action and to direct a notice to other potential plaintiffs.  (Dkt. 54).  The motion was granted and a notice was distributed by mail, at Plaintiffs' cost.  (Dkt. 59, 60, 61, 70).  Discovery was taken, including the production and detailed review of hundreds of hours of video footage showing the actual arrival and departure times of the plaintiffs at work.  Defendant also produced thousands of pages of documents

Motion to Approve Settlement and Stipulated Judgment - 2

detailing its policies and procedures as well as time entries and employment information for each of the named plaintiffs as well as the plaintiffs who later joined the litigation. During the discovery period, an additional 99 present and former County employees chose to join the suit as opt-in plaintiffs. (Dkt. 71, 72, 74-81, 85, 89-93).

The parties and counsel participated in a settlement conference mediated by Magistrate Martinez on April 19, 2010. (Dkt. 134). Because of significant differences in the positions of the parties, the settlement conference was unsuccessful. Trial was set for September 13, 2010 and counsel began preparations for trial. Parties agreed on a trial through the use of representative testimony, though the details of that trial were being negotiated between counsel through the date of settlement.

In advance of trial, the issues were well-defined. Plaintiffs asserted and had video evidence to demonstrate that they regularly arrived at work well before their scheduled shift start, and left work well after their scheduled shift end. Defendant contested both what actually occurred during these periods before and after the scheduled shift and whether some or all of it even constituted compensable work. In addition, Defendant continued to assert its good faith defense to the imposition of an extended statute of limitations and for liquidated damages.

Shortly before trial, the parties agreed to engage in a second settlement conference. The conference was held on August 31, 2010, and was successful in achieving the settlement that is the subject of this motion.

## II. Need for Judicial Approval

The case currently involves 133 plaintiffs, twenty-seven of whom were on the original complaint, the remainder of whom opted into the case after it was filed. Because the claims being settled involve statutory rights to overtime wages, existing authority suggests that finality

Motion to Approve Settlement and Stipulated Judgment - 3

via a settlement and release requires at least a minimum level of court supervision.  In addition, the settlement was reached on behalf of the entire group of plaintiffs, though the settlement conference was attend by approximately 28 of the plaintiffs (which group unanimously approved the proposed settlement).  In these circumstances, the Court should evaluate the fairness of the settlement in light of the issues in the litigation.

It has been repeatedly held "that a statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such a waiver or release contravenes the statutory policy."  *See, e.g.*, *Brooklyn Savings*, 324 U.S. at 704 (citations omitted).  In *Brooklyn Savings*, the Supreme Court expounded at length on the issue in the context of wage claims under the Fair Labor Standards Act ("FLSA"), and ultimately concluded that rights to back wages, including overtime compensation, and liquidated damages under the FLSA may not be waived or released absent judicial supervision.

Looking at the legislative history of the FLSA, the Court found an "intent on the part of Congress to protect certain groups of the population from sub-standard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce." *Id.* at 705.  The Court went on to observe that "[n]o one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act." *Id.*; *see also Gormin v. Brown-Forman Corp,*.744 F. Supp. 1100, 1101, 1104 (M.D. Fla. 1990) (citing *Brooklyn Savings*, among other cases, for the "long established rule" that claims for back wages "may not be waived by an unsupervised release").  From this, the Court concluded that "the same policy considerations which forbid waiver of basic minimum and overtime wages under the Act also prohibit waiver of the employee's" right to liquidated damages.  *Id.*

Motion to Approve Settlement and Stipulated Judgment - 4

The *Brooklyn Savings* court did not expound in detail on the nature of judicial supervision required, but the lower courts have filled in the gaps. Where a genuine dispute arises about the extent of unpaid work and/or the appropriate extent of liquidated damages to be paid, the Court should scrutinize the proposed settlement to determine if it is "fair and equitable" to the parties. *Jarrard v. Southeastern Shipbuilding,* 163 F.2d 960, 961 (5th Cir. 1947); *Lynn's Food Stores, Inc. v. U.S.,* 679 F.2d 1350, 1353 (11th Cir. 1982).

This case is not a class action subject to FRCP 23, and none of the plaintiffs is an unwilling class member. Each Plaintiff affirmatively opted into the case by signing and submitting to the Court a Consent to Join litigation. Each Plaintiff was informed, via Court-approved notice that the case could be settled and that in the event of a judicially approved settlement, he or she would be bound by the final judgment entered, including one entered by stipulation. Approximately 20% of the Plaintiff personally participated in the settlement conference which resulted in agreement. Those participants unanimously agreed to the terms of the settlement. Although all other Plaintiffs are bound by the decisions so reached, it is nonetheless appropriate for the Court also protect the absent Plaintiffs by satisfying itself that the settlement is fair and equitable.

## III. The Proposed Settlement is Fair and Equitable

Following more than a year of discovery (which included significant discovery disputes) the review of hundreds of hours of video evidence and thousands of pages documents produced, as well as numerous witness interviews, site inspections, written discovery and depositions, the Plaintiffs reached certain conclusions about their case. Following a similar process, Defendant reached entirely different conclusions. In short, the issues in the case were much in dispute as the parties prepared for trial. This dispute renders the settlement reasonable.

Motion to Approve Settlement and Stipulated Judgment - 5

Plaintiffs, working with their counsel, concluded that on average, each of the Plaintiffs performed 11 minutes of work prior to their scheduled shift start time, and an additional 8 minutes of work following the end of their scheduled shift start time. Plaintiffs arrived at this estimate based upon review of significant amounts of video tape as well as through witness interviews. (Affidavit of Youtz, para. 9). The use of averages is appropriate as an approximation via representative evidence of actual time worked in a case brought under the FLSA. *Anderson v. Mt. Clemens Pottery,* 328 U.S. 680 (1946). To calculate damages, Plaintiffs were prepared to present evidence supporting these averages and then calculate total unpaid back wages on the basis of 19 minutes per day multiplied by five days per week, multiplied by the number of weeks that each Plaintiff had been employed at the Metropolitan Detention Center. (Youtz, para. 10). This calculation yielded a total back pay amount of $523,454.91during the two-year statutory period or $793,113.00 for a three year statutory period, which Plaintiffs would have presented to the jury. In addition, pursuant to the FLSA, Plaintiffs would have sought an additional, equal amount as liquidated damages. 29 USC 216(b).

Defendant was prepared to contest these calculations. In particular, the alleged 11 minutes before start of shift, Defendant would have tried to show, consisted primarily of time spent walking from the secured entrance of MDC to the various points in the facility at which work was actually performed, and thus was not compensable time pursuant to the Portal-to-Portal Act. 29 USC §254. Defendant also intended to prove that some portion or all of the 8 minute post-shift period likewise consisted of time spent walking to and from the place of work and was, therefore, also non-compensable for the same reason. Defendant was prepared to contend that the damages calculation included computation of too many weeks, since it did not exclude weeks that involved vacation or sick leave, and fully credited even those weeks where

Motion to Approve Settlement and Stipulated Judgment - 6

employees were assigned to different facilities than the MDC, and since the calculations included a three-year pre-filing period, which was only available if Plaintiffs proved that there was a willful failure to pay wages owed, which Defendants denied.  29 USC §255.  Defendant intended to seek an award of no damages, or in the alternative, far less in damages than Plaintiffs sought.  Defendant also intended to prove, as an affirmative defense, that its failure to pay wages, if such occurred, was the result of a good faith mistake, thus permitting the Court to exercise its discretion to decline the award of liquidated damages pursuant to 29 U.S.C. §260.

Less than two weeks prior to trial, the issues were well joined.  Damages were somewhere between zero and $793,113.50, with the possibility of an additional $793,115.50 in liquidated damages.  This was the posture as the parties entered the second settlement conference.

The proposed settlement calls for a total payment from the County of $995,000.00.  The proposed distribution is to each of the Plaintiffs in direct proportion to the number of weeks worked at MDC within the limitations period.  In addition, counsel would recover their expenses, and a contingent fee pursuant to (but actually less than) the fee agreement entered into with the named plaintiffs.

The total settlement is fair in that it represents nearly 190% of the back pay damages (calculated based upon a two year statute) which the Plaintiffs might conceivably have collected at trial, and nearly 60% of the total damages (back pay and liquidated) which could have been achieved at trial.  Far less than this amount might have been awarded by the jury, including at least the possibility of a defense verdict.  On the facts of this case, a settlement for 60% of the maximum damages is fair to the Plaintiffs.  It is also fair to the Defendant in that while it might have paid less in damages following a trial, it bore the distinct risk of having to pay more as well

Motion to Approve Settlement and Stipulated Judgment - 7

as both its own and Plaintiffs' attorney fees which would been quite substantial following a trial. The distribution to the Plaintiffs based upon weeks worked is equitable in light of the anticipated method of proving damages based upon representative testimony. Each Plaintiff shares in direct proportion to the time worked, and also in direct proportion to the damages Plaintiffs would have attempted to prove at trial. No Plaintiff is favored as a result of having initiated the suit, or on any other basis.

The attorney's fee in the case is also fair. Suit was initiated on the basis of a contingent fee contract requiring payment of 33% of the total recovery. (Youtz, para. 11). A one-third contingent fee (plus expenses) is commercially reasonable in the Albuquerque market, and may even be below the norm for complex cases. The actual fee in this case will be for significantly less than 33% of the recovery. As explained in Mr. Youtz' affidavit, Plaintiffs' counsel have agreed to reduce their fee by almost $55,000.00. The net fee for counsel comes to approximately 29% of the recovery, significantly less than the one-third bargained for, and a contingent fee rate that is substantially below market rates for this area. The fee provision of the proposed settlement is thus fair and equitable to the Plaintiffs. As also explained in Mr. Youtz' affidavit, the work performed on this case by Plaintiffs' counsel was significant. The litigation necessarily involved four attorneys on the plaintiffs' side: Shane Youtz, James Piotrowski, Marianne Bowers and Brandt Milstein. Youtz, Piotrowski and Bowers each have between 15 and 25 years experience as trial lawyers and previous FLSA trial experience. The litigation also involved the use of two paralegals from Mr. Youtz' office. As outlined above, discovery in this matter necessarily involved a great deal of time and energy, given the number of plaintiffs and the review of videotape. Preparing a comprehensive and accurate settlement model also required much time and preparation. In addition, as the Court is well aware, this case was settled just

Motion to Approve Settlement and Stipulated Judgment - 8

days before trial.  As a consequence, we had substantially prepared for trial, including testimony preparation, jury instructions, pre-trial brief, witness and exhibit lists, voir dire questions, opening statements, exhibit notebooks, and other trial preparation.  Another time consuming aspect of this litigation involved maintaining good client contact.  Over the course of this litigation lawyers and staff in this case have has answered literally hundreds of telephone calls from clients and have provided them with regular updates both telephonically and by correspondence.  Given the volume of legal work performed in this matter, the favorable terms of settlement, and our willingness to forego nearly $50,000.00 in potentially available fees, we believe the attorneys fee recovery to be fair and equitable under the circumstances.

In addition, Plaintiffs' counsel have incurred $4,145.37 in actual expenses associated with the case.  (Youtz, para. 12).  These expenses are also, pursuant to the fee agreement, to be collected from the recovery.  The expenses were necessarily incurred for filing fees, deposition transcripts, and travel expenses for out of town counsel.  (Youtz, para. 12).

**III.  Conclusion**

For the reasons outlined above, parties respectfully request that this Court enter the proposed stipulated judgment, attached hereto as Exhibit A, and submitted concurrently herewith to Chambers via electronic submission.


Submitted by:

**YOUTZ & VALDEZ, P.C.**


_____/s/_____
Shane Youtz
900 Gold Avenue SW
Albuquerque, NM  87102
(505) 244-1200 – Telephone

Motion to Approve Settlement and Stipulated Judgment - 9

James Piotrowski
HERZFELD & PIOTROWSKI
824 W. Franklin
Boise, ID 83701
(208) 331-9200 – Telephone

*Counsel for Plaintiffs*


Approved by:

**BOARD OF COUNTY COMMISSIONER OF BERNALILLO COUNTY**


<u>Approved via email on 9/17/10 at 12:33 p.m.</u>
Peter Auh
Assistant County Attorney
Bernalillo County
520 Lomas Blvd. NW, 4th Floor
Albuquerque, NM 87102

*Counsel for Defendant*

Motion to Approve Settlement and Stipulated Judgment - 10

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a true and correct copy of the foregoing Motion to Approve Settlement and Stipulated Judgment, along with all referenced exhibits thereto, and the Declaration of Shane Youtz, including all exhibits thereto, were served via electronic notification through the Court's CM/ECF system to all parties this 17th day of September, 2010.

                                                /s/
                                        Shane C. Youtz