IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL PALM, JAMES FOGHORN,
RAY MADRID, CHRISTOPHER
TORRES, SKIP MARQUARDT,
GUADALUPE AVILA, JANET
HILL-KING, KAREN HERRERA,
ANTHONY CORDOVA, ERIC ALLEN,
MISTI CARMICHAEL, RENE
SWANBERG, DEBBIE PADILLA,
JOSEPH TRUJEQUE, REYNA
MARTINEZ, ROBERT CANDELARIA,
MICHAEL LENDINO, DANIEL JANZEN,
STEPHEN PERKINS, ANTHONY
CANDELARIA, LEE JONES, ADAM
TORRES, CLINTON CHRISTISON,
ENOCK ARVIZO, JUAN MUNIZ,
SHELLY BARTON, and RODNEY
HOGHES on their own behalf and on
behalf of all others similarly situated,

    Plaintiffs,

vs.

No. 09-CV-397 MCA-LAM

THE BOARD OF COUNTY COMMISSIONERS
OF BERNALILLO COUNTY,

    Defendant.

## AFFIDAVIT OF SHANE C. YOUTZ

I, Shane C. Youtz, being duly sworn, hereby declare and state as follows:

### Purpose of Declaration

1. My firm is the lead counsel of record for the plaintiffs in the above identified action. I make this declaration in support of plaintiffs' motion to approve settlement and stipulated judgment in that capacity, and on the basis of personal knowledge, addressing my background and experience, and my role in the litigation.

Youtz Affidavit - 1

## Personal Background and Experience, and Role in Litigation

2. I obtained my J.D. from the University of Minnesota Law School in 1991, after receiving a B.A. from the University of Wyoming in 1988.

3. I am admitted to practice in, and am a member in good standing of, the following bars: State Bar of California, 1991; State Bar of New Mexico, 1998; California Federal District Courts for the Northern, Central and Southern Districts and the 9th Federal Circuit Court of Appeals, 1992; New Mexico Federal District Court and the 10th Federal Circuit Court of Appeals, 1998; and the Texas Federal District Court for the Northern District of Texas, 2000.

4. I have been engaged in the practice of law since 1991. From 1991 to 1998 I practiced in Los Angeles, California as a litigation associate in the area of environmental litigation and was involved in some of the largest Superfund lawsuits in the United States, litigating in California, New Jersey and New York. In 1998, I relocated to New Mexico, joining the firm of Youngdahl & Sadin P.C.

5. At Youngdahl & Sadin, P.C. (which was subsequently succeeded by the firm of Provost Umphrey, in or about May of 2001), I worked primarily on labor and employment related matters, including multi-district class actions and collective actions. I became a partner with the firm in 2001. During the period from 1998 through 2001 I gained extensive class action experience representing plaintiffs in New Mexico and other states, including Arkansas, California, New Jersey, Oregon, Texas and West Virginia. Additionally, I successfully tried lawsuits to juries on behalf of classes of individuals in state and federal courts, including a trial before a special master appointed by New Mexico Federal District Court Judge Conway against Wal-Mart in Gallup, New Mexico under similar facts to the instant facts. I was also co-lead counsel with my co-counsel in this case (James Piotrowski) in a six week FLSA jury trial venued

Youtz Affidavit - 2

in the Oregon Federal District Court. I am currently a principal at Youtz & Valdez, P.C., which specializes in wage and hour litigation and consumer antitrust litigation, as well as the direct representation of labor unions.

6. Over the course of nearly twenty years as a lawyer, I have been involved in many different wage and hour collective actions. My involvement has encompassed all aspects of such litigation including discovery, motion work, trial and appellate work. In the course of my practice I have recovered well in excess of $10 million cumulatively on behalf of employees making wage claims against their employers.

## The Instant Litigation

7. The instant litigation arose from complaints made by Plaintiffs who perform work for Bernalillo County as Correctional Officers, at the Bernalillo County Metropolitan Detention Center. Plaintiffs' duties include maintaining custody and control of inmates at the MDC, patrolling designated areas of the detention facility, controlling traffic to and from assigned areas, maintaining security and inspecting the facility to ensure the safety and security of inmates, taking periodic resident counts in the detention levels and arranging for and guarding work details. Plaintiffs are not permitted to leave their post maintaining control over inmates until they are relieved from their shift by another Correctional Officer, Sergeant or Lieutenant. As a consequence of their dynamic responsibilities, Plaintiffs duties generally require them to perform work both and before and after the completion of their shifts.

8. We filed this action pursuant to section 216 of the Fair Labor Standards Act, under which, it is appropriate for a case to proceed as a "collective action," and members be given notice and opportunity to opt-in, if members of the proposed class are similarly situated. See 29 U.S.C. § 216(b) (permitting one or more employees to pursue an action in a representative capacity for

"other employees similarly situated"); see also *Leyva v. Buley*, 125 F.R.D. 512, 514 (E.D. Wash. 1989) (that the additional, and more rigorous requirements of Rule 23 class certification, in contrast, are not applicable). This action proceeded in a typical fashion insofar as initial discovery is focused on determining if members of the proposed class are "similarly situated." Based upon the discovery we conducted and the offer of proof we were able to make parties stipulated to certification of a collective action.

9. The case was certified as a collective action under section 216(b) and we provided notice to all eligible members of the class and began damages discovery. Approximately 100 additional MDC employees prepared "opt-in" forms to join the litigation. It is at this point that we engaged in both liability and damages discovery. Damages discovery involved obtaining necessary information to ascertain the liability for each of the approximately 130 plaintiffs. In order to provide an accurate damages evaluation we interviewed nearly all of the named plaintiffs as well as a significant number of "opt-in plaintiffs." We also obtained individual employment particulars for each of the approximately 130 plaintiffs (tenure of employment, significant absences from employment, wage rates, etc.) In addition we performed a comprehensive analysis of the defendant's staffing patterns, given that many of the plaintiffs worked more than the standard number of shifts in a given workweek – which would affect the damages calculations. We also conducted site inspections, took depositions, and reviewed video tape to determine the impact of Portal-to-Portal issues which would also have an effect on damages. Finally we reviewed hundreds of hours of video tape in which we isolated individual employees entries and exits into the facilities. We compared this data to employee time punches as well as shift schedules in order to reach an average of time worked without compensation. Based upon our evaluation, we determined that the highest average uncompensated time justified by the data

Youtz Affidavit - 4

to be eleven minutes prior to shift start and eight minutes after shift completion (without discounting time for Portal-to-Portal Act issues).

10. The primary issues litigated in this matter related to the amount of uncompensated time and willfulness issues. Where Defendant's violation of the FLSA was willful, the Employer's liability stretches three years, rather than two years, from the date of the filing of the litigation.[1] In order to establish willfulness, Plaintiffs must prove that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by [the FLSA]." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988); *see also Reich v. Monfort, Inc.*, 144 F.3d 1329, 1334 (10th Cir.1998). In addition, liquidated damages *must* be awarded under Section 11 of the Portal-to-Portal Act unless the Employer establishes the following elements of an affirmative defense of good faith:

   1.) That its act or failure to act was in good faith, and;

   2.) That it had reasonable grounds for believing that its act or omission did not violate the FLSA. *Sinclair v. Automobile Club of Oklahoma, Inc.*, 733 F.2d 726 (10th Cir. 1984). In that context we reviewed policy documents and took depositions relating to Defendant's knowledge of the practices at issue. We also prepared our own witnesses to testify as regards the employer's knowledge of the practices which led to uncompensated work.

12. Two weeks before trial, at a settlement conference arranged by the Court, parties agreed upon a settlement in the amount of $995,000.00, to include all attorneys fees and costs. In order to fairly allocate the settlement dollars among the plaintiffs we have applied the settlement analysis to pay each plaintiff the appropriate portion of the settlement based upon the number of

---

[1] A two-year statute of limitations applies to an action for unpaid wages under the FLSA, except where an employer acts willfully, in which case, a three-year period applies. 29 U.S.C. § 255(a).

Youtz Affidavit - 5

weeks they worked for Defendant during the statutory period, using three years as the statutory period.

## Attorneys Fees and Costs

13. As explained below, we have volunteered, as part of the settlement, to reduce our fee recovery by nearly $50,000.00. The Plaintiffs in this action retained me under my firm's standard fee agreement which calls for reimbursement of 33% of the recovery plus gross receipts tax and costs. Under such an arrangement, we would be entitled to receive a total of fees and costs of $359,028.71 (fee of $331,666.67, gross receipts tax of $23,216.67, and costs of $4,145.37). It is also our frequent practice to reduce our fee and cost recovery in wage and hour litigation. In this instance we have volunteered to reduce our fee by $27,467.85, so that we would receive a total of fees and costs of $329,638.11 (fee of $304,198.82, gross receipts tax of $21,293.92, and costs of $4,145.37). In addition, we have agreed to provide $20,000.00 of our fee to establish a scholarship fund with the American Federation of Federal, State, County and Municipal Employees, Council 18, New Mexico, for the benefit of correctional officers throughout the State of New Mexico. (See, Exhibit 1) This scholarship fund will be established upon completion of the settlement. Establishment of this scholarship fund will reduce the attorney fee recovery to $284,198.82, or approximately 29% of the recovery.

14. The costs we incurred in this matter are attached hereto as Exhibit 2. Each of the costs identified were incurred as necessary costs to maintain this litigation and were incurred in the most reasonable fashion we could accomplish.

15. This action required significant time and resources from my law firm and from Mr. Piotrowski's firm. The litigation necessarily involved four attorneys on the plaintiffs' side: Shane Youtz, James Piotrowski, Marianne Bowers and Brandt Milstein. Youtz, Piotrowski and

Youtz Affidavit - 6

Bowers each have between 15 and 25 years experience as trial lawyers and previous FLSA trial experience. The litigation also involved the use of two paralegals from my office. As outlined above, discovery in this matter necessarily involved a great deal of time and energy, given the number of plaintiffs and the review of videotape. Preparing a comprehensive and accurate settlement model also required much time and preparation. In addition, as the Court is well aware, this case was settled just days before trial. As a consequence, we had substantially prepared for trial, including testimony preparation, jury instructions, pre-trial brief, witness and exhibit lists, voir dire questions, opening statements, exhibit notebooks, and other trial preparation. Another time consuming aspect of this litigation involved maintaining client contact. Over the course of this litigation my office has answered literally hundreds of telephone calls from our clients and have provided them with regular updates both telephonically and by correspondence. Given the volume of legal work performed in this matter, the favorable terms of settlement, and our willingness to forego nearly $50,000.00 in potentially available fees, we believe the attorneys fee recovery to be fair and equitable under the circumstances.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

DATED this 17TH day of September, 2010.

Shane C. Youtz
YOUTZ & VALDEZ, P.C.
*Attorneys for Plaintiffs*

STATE OF NEW MEXICO    )
                       ) ss.
COUNTY OF BERNALILLO   )

Youtz Affidavit - 7

SUBSCRIBED AND SWORN TO before me this 17th day of September, 2010, by Shane C. Youtz.

*(Notary seal: Allison L. Keelin, Notary Public, State of New Mexico)*

_____
Notary Public

My Commission Expires: 11-15-10