IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL PALM, JAMES FOGHORN,
RAY MADRID, CHRISTOPHER
TORRES, SKIP MARQUARDT,
GUADALUPE AVILA, JANET
HILL-KING, KAREN HERRERA,
ANTHONY CORDOVA, ERIC ALLEN,
MISTI CARMICHAEL, RENE
SWANBERG, DEBBIE PADILLA,
JOSEPH TRUJEQUE, REYNA
MARTINEZ, ROBERT CANDELARIA,
MICHAEL LENDINO, DANIEL JANZEN,
STEPHEN PERKINS, ANTHONY
CANDELARIA, LEE JONES, ADAM
TORRES, CLINTON CHRISTISON,
ENOCK ARVIZO, JUAN MUNIZ,
SHELLY BARTON, and RODNEY
HOGHES on their own behalf and on
behalf of all others similarly situated,

    Plaintiffs,

                                                                                       No. 09-CV-397 MCA-LAM

vs.

THE BOARD OF COUNTY COMMISSIONERS
OF BERNALILLO COUNTY,

    Defendant.

**PLAINTIFFS' SUPPLEMENTAL FEE APPLICATION BRIEF IN SUPPORT OF THE PARTIES' JOINT MOTION TO APPROVE SETTLEMENT AND STIPULATED JUDGMENT**

    COME NOW the plaintiffs, by and through undersigned counsel, and hereby move the

Court, pursuant to 29 USC §216 to approve counsels' fees and costs.  As grounds for such

motion, plaintiffs' state as follows:

1

## I.  Background of the Case[1]

Plaintiffs are a group of Corrections Officers, Sergeants and Lieutenants employed (or formerly employed) at the Bernalillo County Metropolitan Detention Center.  The original Complaint, filed by four named corrections officers on April 27, 2009, alleged that as a result of certain job requirements imposed by Bernalillo County and the necessity of operating a detention center (and attendant security needs), the Plaintiffs and all other Corrections Officers, Sergeants and Lieutenants were routinely required to work in excess of their scheduled 8-hour shifts, but were not routinely paid for the time worked in excess of their scheduled shifts.  (Dkt. 1).

Plaintiffs moved to certify the case as a collective action and to direct a notice to other potential plaintiffs.  (Dkt. 54).  The motion was granted and a notice was distributed by mail, at Plaintiffs' cost.  (Dkt. 59, 60, 61, 70).  During the discovery period, an additional 99 present and former County employees chose to join the suit as opt-in plaintiffs.  (Dkt. 71, 72, 74-81, 85, 89-93).  Shortly before trial, the parties agreed to engage in a second settlement conference.  The conference was held on August 31, 2010, and was successful in achieving the settlement that is the subject of this motion.

## II.  The Settlement

The settlement agreement resolves all claims of the 133 plaintiffs, twenty-seven of whom were on the original complaint, the remainder of whom opted into the case after it was filed.  The settlement of this case created a single, common fund of $995,000.00 to be used for damages, attorney's fees and expenses.  Class counsel seek an award of $304,198.82 for attorney's fees for work performed in this action, plus costs and gross receipts tax.  As indicated in Counsel's previous motion, the undersigned has committed to provide $20,000.00 of its fee to establish a

---

[1] Plaintiffs' counsel provided a more comprehensive summary of the litigation and defenses in its joint motion for approval of settlement and hereby incorporates that summary into this motion.

scholarship fund for the benefit of correctional officers in the state of New Mexico. Consequently, counsel will receive a fee award of 28.5% of the common fund. Such an award is fair and reasonable under the 10th Circuit's hybrid approach for common fund cases, which combines the percentage fee method with a "cross-check" for reasonableness using the specific factors traditionally employed to calculate the lodestar. *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994).

### III. The Proposed Fee Award is Fair and Equitable

#### A. The Legal Standard for fee awards in Common Fund Cases.

Where there is a common fund in a class settlement, application of a percentage method to calculate an attorney's fee award is favored. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980); *Camden I Condominium Association, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991). Calculating fees based upon a percentage of the settlement fund 'is more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases.' *Strang v. JHM Mortgage Securities Limited Partnership*, 890 F.Supp. 499, 502-503 (E.D. Va. 1995). The percentage method is also used for common fund FLSA settlements. *Kidrick v. ABC Television and & Appliance Rental*, 1999 WL 1027050 (N.D. W. Va). In *Kidrick,* the trial court awarded a 30 percent of the fund fee in a common fund FLSA case, determining that the 30 percent recovery was reasonable. The common fund doctrine allows a court to award reasonable attorneys' fees to a party who, at their own expense successfully maintains a suit for the creation, recovery, preservation or increase of a common fund. *Layman v. State*, 658 S.E.2d 320, 329 (S.C. 2008); See also, *Petition of Crum. Johnson v. Williams,* 14 S.E.2d 21, 23 (S.C. 1941).

The common fund doctrine is applied when "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Boeing v. VanGemert*, 444 U.S. 472, 479 (1980).  The common fund doctrine reflects a traditional equitable practice and stands as a well-recognized exception to the general rule that each litigant must bear his attorneys' fees. *Boeing*, 444 U.S. at 478.  The notion that an attorney creating a fund is entitled to a reasonable fee is premised upon the equitable principles of the prevention of a windfall to class members and unjust enrichment. *In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 736 F.Supp. 1007, 1012 (E.D. Mo. 1990) (citing *Boeing*, 444 U.S. at 478; 3 *Newberg on Class Actions* § 14.02 at 185-86 (1986)).  Notably, The Report of the Third Circuit Task Force favors a percentage allowance, and notes that it has become generally used in fund-in-court cases. *The Report of the Third Circuit Task Force*, 108 F.R.D. 237, 255 (1985).   Consistent with *The Report of the Third Circuit Task Force*, district court cases in the Fourth Circuit use a percentage allowance method in awarding fees in class action cases. *Edmonds v. U.S.* 658 F.Supp 1126 (D.S.C. 1987).  See also, *Goldenberg v. Marriott PLP Corp.,* 33 F. Supp.2d. 434, 438 (D.Md. 1998); *Strang v. JHM Mortg. Securities Ltd. Partnership,* 890 F. Supp 499, 502 (E.D. Va. 1995).  The court in *Edmond* found that "the preferred method of computation of fees in this common fund case is the percentage of the fund method. *Edmonds v. U.S.,* at 1143.

The 10th Circuit approaches common fund cases on a very similar, but slightly different basis than other circuits.  While the 10th Circuit has implied a preference for the percentage of the fund method in common fund cases, it has essentially adopted a hybrid approach:  "In common fund cases, the Tenth Circuit applies a hybrid approach combining the percentage fee method with the specific factors traditionally used to calculate the lodestar." *Bruner v.*

*Sprint/United Management Co.*, 2009 WL 2058762, *3 (D.Kan.)  This hybrid approach, outlined in *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994), essentially involves the Court in an evaluation of the percentage of the fund requested, allowing the district court to reduce the attorneys' fees which if determined under the *Johnson*/lodestar approach would be unreasonable.  In *Bruner v. Sprint/United Management Co.*, the District Court employed the hybrid approach outlined in *Gottlieb,* reducing the attorneys' fee in an FLSA common fund recovery.  In *Bruner*, Plaintiffs counsel sought a recovery of 30% of the common fund, which the Court determined to be reasonable.  However, the recovery under the lodestar approach would have yielded an hourly rate of $1,487.54, which the Court reduced to $590.91, which the court noted was reflective of rates counsel had received in similar FLSA actions.

Historically, the 10th Circuit has generally used the twelve-factor *Johnson* analysis as a method of determining a reasonable attorney fee that may be useful in determining subsequent ad hoc adjustments to the lodestar.  The use of the *Johnson* analysis was recently reviewed by the 10th Circuit in *Anchondo v. Anderson, Crenshaw & Associates*, (2010 WL 3261155) (C.A. 10 NM), in light of the Supreme Court's April, 2010 decision in *Perdue v. Kenny A.*, 130 S.Ct. 1662 (2010).  In *Anchondo*, the 10th Circuit noted the Supreme Court's difficulty with the *Johnson* analysis: "In *Perdue* the Court appears to significantly marginalize the twelve-factor *Johnson* analysis, which it discounts as just one possible method."  *Anchondo*, at 2*.  The 10th Circuit made clear, however, that *Perdue* had not made the *Johnson* analysis irrelevant:  "We do not suggest that the *Johnson* factors have become irrelevant; *Perdue* did not overrule *Hensley's* allowance that under appropriate circumstances they may be useful in determining subsequent ad hoc adjustments to the lodestar." *Anchondo*, at 2*.[2]

---

[2] The primary effect of the *Perdue* decision is to make clear that lodestar based enhancements are awarded in only rare and exceptional circumstances.

5

Given the somewhat uncertain weight to be assigned the *Johnson* factors concerning fee petitions in the 10th Circuit, counsel anticipates that this Court's determination of the most appropriate evaluation would involve the 10th Circuit's stated preference for its hybrid approach, which initially involves the common fund analysis, as well as the lodestar/*Johnson* check on the common fund recovery – consequently all factors are addressed below.

**B. Counsel's proposed fee is fair and reasonable under the 10th Circuit's common fund approach.**

1. **Common fund recovery**

Plaintiffs counsel has requested a common fund recovery in the amount of 30.5% or 28.5% after establishment of a scholarship fund. Under the common fund recovery theory, counsel's request is fair and reasonable, considering the quantity and quality of work performed by counsel and the result obtained. Both in its declarations and original motions, Plaintiffs' counsel extensively outlined the work performed in this action in order to complete the case. The case involved substantial discovery, review of hundreds of hours of video evidence and thousands of pages documents produced, as well as numerous witness interviews, site inspections, written discovery and depositions. The case involved collective action treatment, a complex legal landscape under the FLSA which involves separate analysis for two stages of certification and complicated evidentiary issues. *Anderson v. Mt. Clemens Pottery,* 328 U.S. 680 (1946). The case also required sophisticated counsel equipped and adept at handling all the variants presented by representing 133 plaintiffs.

Contingent fee arrangements for such representation are both standard and necessary in the FLSA context. (Piotrowski Decl., para. 12.) FLSA contingency fee agreements normally call for 35% - 40% fee recovery and are standard in the national market. (Piotrowski Decl., para.

11 & 13.) Suit was initiated on the basis of a contingent fee contract requiring payment of 33% of the total recovery. (First Youtz Decl, para. 11). A one-third contingent fee (plus expenses) is commercially reasonable in the Albuquerque market, and may even be below the norm for complex cases. (Supplemental Youtz Decl., para 4.)

Under these facts, the percentage recovery from the common fund is fair and reasonable. This amount is reasonable in these circumstances and is amply supported by the factors set forth in *Johnson*[3], set forth below, used to determine an appropriate percentage of the fund fee. See also, *Liberty Mut. Ins. Co. v. Employee Resource Management, Inc.,*176 F. Supp.2d 510, 532 (D.S.C. 2001). An award of fees in the range of 30% of the fund has been held to be reasonable. *See Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268 (9th Cir. 1989); *In re Union Carbide Corp. Consumer Products Business Securities Litigation*, 714 F.Supp. 160, 168 (S.D. N.Y. 1989). In awarding a percentage of common fund recoveries, courts in this circuit have awarded fee awards ranging from 4% to 58%. *Bruner v. Sprint/United Management Co.*, 2009 WL 2058762, *7 (D.Kan.). In *Bruner*, the Court agreed that a 30% recovery percentage was within the range of a reasonable recovery in FLSA collective actions. *Bruner*, at *8.

**2. The Lodestar Approach, Used to Cross-Check the Percentage of the Fund Method, Verifies that the Requested Fee Award is Reasonable.**

Although Class Counsel seek approval of a fee based on a percentage of the fund recovered, the requested fee is fair and reasonable when considered from a lodestar approach as well. As stated, the 10th Circuit's hybrid approach in *Gottlieb* directs the Court to "cross-check" the reasonableness of a percentage fee by subjecting it to a lodestar analysis. This method has been adopted by other courts. *See, In re BankAmerica Corp. Securities Litigation*, 228 F.Supp.2d 1061, 1065 (E.D.Mo. 2002) (using lodestar approach to verify reasonableness of fees

---

[3] *Johnson*, 488 F.2d at 717-19.

under percentage of fund approach); *Chrysler Motors*, 736 F.Supp. at 1016 (observing that although some courts have voiced their preference for the percentage approach, they nevertheless support the result by applying a lodestar analysis).

A "lodestar" calculation involves multiplying the number of hours reasonably expended by a reasonable hourly rate for each attorney's time.  Counsel in the instant action are nationally recognized as FLSA experts.  (Youtz Suppl. Decl., para. 2; Piotrowski Decl., para. 3.)  Counsel have litigated, often together, FLSA cases in several states, including Texas, New Mexico, Oregon, and Idaho and have been awarded fees in the range of $250 (for work performed in 1998) to $650 per hour.  (Youtz Suppl. Decl., para. 6; Piotrowski Decl., para. 17.)  Counsel has estimated their average hourly recovery over the previous five years combined in these cases to be $450 per hour (Youtz Suppl. Decl., para. 6) and $400 to $600 per hour (Piotrowski Decl., para. 17.)

As indicated in submissions, <u>Armijo v. Wal-Mart Stores, Inc.</u>, D-0117-CV-20000-2211, is the most recent wage and hour common fund case in which Youtz & Valdez, PC participated.  (Youtz Suppl. Decl., para. 7.)  <u>Armijo</u>, like the instant case, involved allegations which triggered both class and collective remedies.  In that action, the District Court approved fees for class counsel herein based upon the following lodestar rates:

| | |
|---|---|
| Youtz/Piotrowski/Bowers: | $650.00 per hour |
| Various lawyers with FLSA Experience: | $450.00 per hour |
| FLSA knowledgeable paralegal | $200.00 per hour |

(Youtz Suppl. Decl., para. 7) The blended lodestar rate for legal work performed by Class Counsel in that action was $484.28 per hour.  (Youtz Suppl. Decl., para. 7)     In that action the Court also authorized a multiplier making the blended rate higher than the rates identified herein.

8

Class Counsel received these rates in 2009 in a similar wage and hour action. (Attached as Exhibit 1 to Youtz' Supplemental Declaration is the order.)

There do not appear to be other attorneys in New Mexico who specialize, in FLSA litigation and counsel cannot place these rates within any appropriate context for New Mexico FLSA attorneys. (Youtz Suppl. Decl., para. 8.) However the lodestar rates are consistent with hourly rates approved on a lodestar basis in District Courts in the 10th Circuit for FLSA specialists. In particular, the *Bruner v. Sprint/United Management Co.*, 2009 WL 2058762, *3 (D.Kan.), decision identified lodestar rates which included $862.00, $558.00 and the lodestar rate approved in that FLSA collective action of $590.91. These rates are consistent with counsel's experience in terms of rates received by other FLSA specialists around the United States. (Youtz Suppl. Decl., para. 6; Piotrowski Decl., para. 17.)

In terms of the work performed by counsel, the total hours for the time period through October 16, 2010 is 739.75 hours. (Youtz Suppl. Decl., para. 8.) Dividing the hours on a per client basis comes to approximately 5.5 hours per client, including attorney and paralegal time. 5.5 hours per recovering class member, in counsel's experience, establishes that counsel operated an efficient collective action considering the legal and factual issues involved. (Youtz Suppl. Decl., para. 9.) The lodestar rates most recently received in a wage and hour case in New Mexico would be appropriate for this work and counsel has identified the work performed at those rates in the attached exhibit (Exhibit 2 to Youtz Suppl. Decl.). At those previously approved New Mexico lodestar rates counsel's fee would be $363,812.50 plus gross receipts tax and costs, or a blended rate of $491.80. As made clear in this motion, however, counsel does not seek a lodestar recovery at this rate, but rather the lower percentage recovery amount, which would result in a blended rate of $411.17 – which is significantly less than the lodestar blended

rate awarded in *Armijo* and much lower than the rates identified in the 10th Circuit district court decisions.

### 3. The *Johnson* factors.

As indicated previously, while the *Johnson* factors are deemphasized in *Achondo,* they are not abandoned by the 10th Circuit as a means of adjusting the lodestar: "We do not suggest that the *Johnson* factors have become irrelevant; *Perdue* did not overrule *Hensley's* allowance that under appropriate circumstances they may be useful in determining subsequent ad hoc adjustments to the lodestar." *Anchondo*, at 2\*. Thus, the lodestar may be increased, or sometimes decreased, in accordance with twelve separate potential factors in determining an attorneys' fees award:

(1)  the time and labor required;
(2)  the novelty and difficulty of the questions involved;
(3)  the skill requisite to perform the legal service properly;
(4)  the preclusion of other employment by the attorney due to acceptance of the case;
(5)  the customary fee;
(6)  whether the fee is fixed or contingent;
(7)  time limitations imposed by the client or the circumstances;
(8)  the amount involved and the results obtained;
(9)  the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and the length of the professional relationship with the client; and
(12) awards in similar cases.

*Chrysler Motors*, 736 F.Supp. at 1014 (citing *Johnson*, 488 F.2d 714); see also *In re Texas Prison Litig.*, 191 F.R.D. 164, 177 (W.D. Mo. 1999) (applying *Johnson* factors in assessing reasonableness of percentage of fund allocated to attorneys' fees).

#### i. The time and labor required.

As noted above, Class Counsel have expended over 740 hours, among other things, investigating all of the issues in this case, analyzing thousands of documents (both in hard copy

10

and electronic form); interviewing numerous witnesses; preparing and arguing collective action certification motions; and preparing for trial. Put simply, Class Counsels' work in this case has been substantial.

>  ii. **The limitations imposed by the client or other circumstances, the nature and length of the professional relationship with clients, and preclusion of other employment by the attorneys due to acceptance of the case.**

The factor pertaining to the limitations imposed by the client or other circumstances recognizes that "[p]riority work that delays the lawyer's other work is entitled to some premium." *Johnson*, 488 F.2d at 718. Here, Class Counsel spent large amounts of time on this case, often prioritizing the work on this case over work in other cases. (Piotrowski Decl., para. 16.)

Class Counsel also meet the factor regarding the nature and length of the professional relationship with the clients. Class Counsel have been involved in this litigation since its inception, and have dedicated their efforts to protect the best interests of Plaintiffs and the Class. See *Millsap v. McDonnell Douglass Corporation*, 2003 WL 21277124, at *11 (N.D. Okla.) (observing the counsel's substantial involvement in the litigation satisfies this factor).

Class Counsel also meet the factor regarding preclusion of other employment due to this case. Counsel were precluded from performing certain work to schedule for and prepare for trial. In these circumstances, Class Counsel have been precluded from accepting certain other work due to the time demands imposed by preparing this case for the best presentation to a jury. See *Yates v. Mobile County Personnel Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) (determining that this factor should raise the fee award because the expenditure of 1000 billable hours necessarily had some adverse impact on the attorney's ability to accept other work).

>  iii. **The novelty and difficulty of the questions, and the "undesirability" of the case.**

As set forth above, this case presents novel questions of law, and complex issues of fact. Common issues with respect to liability are convoluted and thorny at best. This case presented unique issues relating to work time in light of recent Portal-to-Portal decisions and also involved unique questions raised by the County's defense as regards willfulness.

### iv. The skill required to perform legal services properly, and the experience, reputation and ability of the attorneys.

As noted above, this case was complicated, both in terms of establishing class certification and in ultimately proving liability and damages. (Piotrowski Decl., para. 9.) Class Counsel, who have extensive experience in complex FLSA collective action litigation, including wage and hour class-action litigation, tackled all of these difficult issues, ultimately reaching an excellent settlement. Finally, the results obtained for the Class, discussed above, evidence the skill and quality of Class Counsel. See *In re Lucent Technologies, Inc., Sec. Litig.*, 327 F. Supp.2d 426, 436 (D.N.J. 2004).

### v. The amount involved and the results obtained.

The result achieved is a major factor in making a fee award. *In re King Res. Co. Sec. Litig.*, 420 F.Supp. 610, 630 (D. Colo. 1976) ("the amount of the recovery, and end results achieved are of primary importance, for these are the true benefit to the client"). Here, the results achieved (as outlined in counsel's Motion for Judgment) are extraordinary and fully support the requested fee. A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee and outlay of out-of-pocket costs incurred by Class Counsel, and the fact that risks of failure and nonpayment in a class action are extremely high. Cases recognize that such risk is an important factor in determining an appropriate award. *Ressler v. Jacobsen*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) ("numerous cases recognize that the attorney's contingent risk is an important factor in determining the fee award."). Thus, "courts

routinely enhance the lodestar to reflect the risk of non-payment in common fund cases." *In re Wash. Pub. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).  This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases. *Id*. at 1299.

The risk of nonpayment in this class action weighs in favor of awarding Class Counsel 30% of the Fund.  Class Counsel have received no compensation during the course of this litigation, and have also incurred significant expenses in litigating on behalf of the Class, none of which would have been recovered if the case had not been successfully concluded.  From the time Class Counsel filed suit, there existed a real possibility that the case would not be certified and/or that they would achieve no recovery for the Class and hence no compensation.  Class Counsels' investment of time and expenses has always been at risk and wholly contingent on the result achieved.

### vi.   The customary fee, and attorneys' fees awards in similar cases.

The 30% fee requested in this case is customary and well in line with attorneys' fees awards in similar cases, as explained above.  The requested fee award is also well in line with attorneys' fees awards by federal courts in class actions throughout the country. See, *e.g.*, Herbert Newberg & Alba Conte, *Newberg on Class Actions*, §14.6, at p. 550 (4th ed. 2002) (noting that 50% of the fund appears to be an approximate upper limit on a reasonable fee award, somewhat larger percentages are not unprecedented); *Camden I Condo Ass.'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991) (noting that "an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded."); *In re Warner Communics Sec. Litig.*, 618 F.Supp. 735, 749 (S.D.N.Y. 1985) (observing that "[t]raditionally,

courts in this Circuit and elsewhere have awarded fees in the 20-50% range in class actions"), *aff'd*, 798 F.2d 35 (2nd Cir. 1986));  *In re U.S. Bancorp Litg.*, 291 F.3d 1035 (8th Cir.  2002) (36% of fund); *In re Combustion, Inc.*, 968 F.Supp. 1116 (W.D. La. 1997) ($127 million recovery; 36% of settlement); *Greene v. Emersons, Ltd.*, 1987 WL 11558 at *2 (S.D.N.Y. 1987) (46.2% of common fund in securities case awarded as fees and expenses); *In re Ampicillin Antitrust Litig.*, 526 F.Supp. 494 (D.D.C. 1981) (45% of settlement fund awarded in fees and expenses); *Bellow v. Integrated Resources., Inc.,* 1998 WL 200670 (S.D.N.Y. 1990) (holding that the common range of fees is 20-50%; *Muehler v. Land O'Lakes, Inc.,* 617 F.Supp. 1370, 1375-76 (D. Minn. 1985) (awarding 35.5% fee).

The foregoing percentages are instructive and amply support Class Counsels' 30% requested fee here.

### vii. The reaction of the Class Members to the attorneys' fees requested by Class Counsel.

No class members have objected to Class Counsels' attorneys' fee request.  The 27 representatives present at the settlement conference all agreed that a 33% fee (less $5,000.00) was appropriate and no class member has come forward to complain since the settlement conference.  ( Piotrowski Decl., para. 15.)

### viii. Other factors

Counsel has, in other portions of the briefing, discussed the remaining factors and does not want to repeat those arguments here.  In any event the other factors augur in favor of the proposed fee.

## III.  Conclusion

For the reasons outlined above, parties respectfully request that this Court enter the proposed stipulated judgment, and submitted concurrently herewith to Chambers via electronic submission.

        Submitted by:

        **YOUTZ & VALDEZ, P.C.**

        _____/s/_____
        Shane Youtz
        900 Gold Avenue SW
        Albuquerque, NM  87102
        (505) 244-1200 – Telephone

        James Piotrowski
        HERZFELD & PIOTROWSKI
        824 W. Franklin
        Boise, ID  83701
        (208) 331-9200 – Telephone

        *Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a true and correct copy of the foregoing Plaintiffs' Supplemental Fee Application Brief in Support of the Parties' Joint Motion to Approve Settlement and Stipulated Judgment, along with the Declaration of James Piotrowski and the Supplemental Declaration of Shane Youtz, along with all exhibits attached thereto, was served via electronic notification through the Court's CM/ECF system this 19th day of October, 2010, to the following:

Peter Auh  
Assistant County Attorney  
Bernalillo County  
520 Lomas Blvd. NW, 4th Floor  
Albuquerque, NM  87102  
pauh@bernco.gov  
*Counsel for Defendant*

                                              /s/  
                                    Shane C. Youtz